IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, | * | |
| AMALIA POTTER, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. PX-16-0475 |
| | * | |
| | * | |
| CASA DE MARYLAND, *et al.*, | * | |
| | * | |
| Defendants. | | |
| | ****** | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court in this *qui tam* action is the Motion to Dismiss the Amended Complaint filed by Defendants CASA de Maryland, CASA in Action, Gustavo Torres, and Virginia Kase (collectively, "Defendants" or "CASA"). ECF No. 27. Also pending is the Motion for Reconsideration filed by Plaintiff-Relator Amalia Potter. ECF No. 24. The matters are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. Upon consideration of the parties' arguments, the Court GRANTS Defendants' motion and DENIES Plaintiff's motion.

I. **Background**

This case was the subject of the Court's prior Memorandum Opinion and Order, so the Court will not repeat the matters previously discussed in detail. *See* ECF Nos. 22, 23.

Potter maintains that her former employer, CASA de Maryland, Inc. and its affiliate, CASA in Action, Inc., violated the False Claims Act ("FCA") by certifying that CASA had complied with all "applicable" laws and regulations in connection with federal grant monies it received, even though CASA had not fully and properly completed I-9 employment verification forms for all of its employees. Potter specifically alleges that CASA made false claims to the

1

Government during an audit triggered by CASA's receipt of Government funds (the "A-133 Audit"), and in grant-related documents called Program Participation Assurances ("PPAs") and Financial Status Reports ("FSPs"), in which CASA certified that it had complied with "applicable" laws, regulations, and grant provisions governing the programs under which CASA received Government funding. When Potter tried to address the deficient I-9 forms with CASA, she faced resistance and then was fired.

In its prior Memorandum Opinion, the Court dismissed Potter's substantive FCA and FCA conspiracy claims because Potter failed to aver facts to support a plausible inference that CASA falsely represented or omitted information to the Government relating to incomplete or deficient I-9 forms, or that such false representations or omissions would have been material to the Government's decision whether to grant funding to CASA. ECF No. 22 at 6–13. The Court also dismissed Potter's FCA retaliation claim because at best, the Complaint showed that CASA knew about Potter's concerns regarding I-9 compliance, but the Complaint did not include sufficient facts to support the objective reasonableness of Potter's view that CASA was violating the FCA, or that CASA was on notice of FCA-protected activity. ECF No. 22 at 15–18.

The Court granted Potter leave to amend her Complaint to cure the pleading deficiencies identified in her FCA claims. The Court particularly noted that the Complaint was bereft of any facts showing that CASA made any materially false statements or material omissions regarding I-9 employee verifications in the A-133 Audit, in PPAs, or in FSPs, and directed Potter to amend the Complaint to add such facts, if possible. Potter was also directed to provide additional facts related to her allegedly protected conduct sufficient to make out a retaliation claim. The Court dismissed Potter's state-law wrongful termination claim with prejudice.

Potter has now amended her Complaint, but adds no facts regarding representations or omissions made to the Government during the A-133 Audit, in PPAs, or in FSPs, related to the completion of I-9 forms. Nor has Potter included any facts to show how the claimed I-9 deficiencies were material to the Government's decision to pay CASA federal grant monies. Rather, Potter's new factual allegations concern the circumstances under which she discovered CASA's I-9 noncompliance and how she confirmed her suspicion that CASA's methods for addressing deficient I-9 forms contravened other legal requirements. Potter also provides further detail about her communications with CASA regarding the proper way to correct employees' I-9 forms. *See* ECF No. 25 ¶¶ 61, 62, 66, 68, 69, 70, 73, 74, 78.

Defendants move to dismiss the Amended Complaint, arguing that Potter's amendments did not cure the deficiencies identified by the Court. *See generally* ECF No. 27. In response, Potter contends that because an A-133 Audit requires review of employee I-9 forms and the I-9 forms were not properly completed, any CASA certifications regarding compliance with the A-133 Audit requirements must have been false. ECF No. 28-1 at 7.[1] Potter contends that the I-9 forms necessarily were material to the Government's decision to grant funding because the A-133 Audit includes a review of I-9s. ECF No. 28-1 at 8. Potter also argues that her Amended Complaint sufficiently supports her contention that she was engaged in FCA-protected conduct and terminated because of that conduct. ECF No. 28-1 at 8–11. Separately, Potter moves the Court to alter or amend the dismissal with prejudice of her wrongful discharge claim (Count IV of her initial Complaint), arguing that she was indeed terminated for her refusal to amend the I-9s in a manner which would constitute a crime. *See* ECF No. 24.

---

[1] The Court notes that Potter does not rely on any new factual allegations in the Amended Complaint to support her argument.

3

The Court discusses each motion in turn. For the reasons that follow, the Court will grant Defendants' motion to dismiss, and deny Potter's motion for reconsideration.

## II. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint includes facts sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A plaintiff must plead facts to support each element of the claim to satisfy the standard. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). In so assessing, the Court takes as true all well-pleaded factual allegations and makes all reasonable inferences in the plaintiff's favor. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court does not credit conclusory statements or legal conclusions, even when couched as allegations of fact. *See Iqbal*, 556 U.S. 678–79; *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Actions brought under the FCA must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013).

In deciding a motion brought under Rule 12(b)(6), the Court generally may not consider extrinsic evidence. However, the Court may consider any documents attached to a motion to dismiss if they are "integral to and explicitly relied on in the complaint," and authenticity is not challenged. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *see also Philips*, 572 F.3d at 180; *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) ("[W]here a complaint in a fraud action references a document containing the alleged material misrepresentations, the referenced document may be considered part of the

complaint."). This rule seeks to prevent a "situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document . . . even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *Am. Chiropractic Ass'n*, 367 F.3d at 234 (internal marks and citation omitted).

### A. Substantive FCA Violation (Count I) and Conspiracy to Violate the FCA (Count II)

The FCA allows private litigants to bring actions on behalf of the United States against any entity that makes false representations to the federal Government in connection with a claim for payment from the Government. 31 U.S.C. §§ 3729, 3730(b). To state a claim under the FCA, a plaintiff must allege (1) a false statement or fraudulent course of conduct; (2) which was material to the Government determination to pay a claim; (3) made or carried out with the requisite knowledge; (4) that caused the Government to pay out money or to forfeit monies due. *U.S. ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014).

A false statement is material if it "has a natural tendency to influence agency action or is capable of influencing agency action." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) (internal quotation marks and citation omitted). In the context of FCA claims, the materiality requirement is a demanding one; it is "intended to keep FCA liability from attaching to noncompliance with any of potentially hundreds of legal requirements in a contract." *United States v. Triple Canopy, Inc.*, 857 F.3d 174, 178 (4th Cir. 2017), *cert. dismissed*, 138 S. Ct. 370 (2017) (internal quotation marks and citation omitted); *see U.S. ex rel. De Cesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 586 (E.D. Va. 2010) ("Only *materially false* certifications—those that would lead the government to make payments it would not otherwise have made—are actionable." (internal quotation marks and citations omitted,

5

emphasis added)). If Government funding is conditioned on compliance with a legal requirement and that compliance has been falsely certified, an FCA action is available. *Harrison*, 176 F.3d at 786. However, the noncompliance at issue must be "a prerequisite" to securing Government funding, and the defendant must have falsely "certified such compliance" to obtain such funding. *Id.* at 787; *see Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016).

Where, as here, an entity fails to disclose that it may not be in full compliance with all rules and regulations, any such omission regarding "violations of statutory, regulatory, or contractual requirements" will support FCA liability only when the omissions render the remaining representations "misleading with respect to the goods or services provided." *Universal Health*, 136 S. Ct. at 1999. Put differently, "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Id.* at 2002; *see Andrews v. City of Norfolk*, No. 2:16CV681, 2017 WL 4837707, at *8 (E.D. Va. Oct. 23, 2017).

On this point, Potter has added no facts to the Amended Complaint regarding the contents of CASA's PPAs and FSPs that permit a reasonable inference that any information was communicated in these forms regarding employee I-9s. Nor does the Amended Complaint provide any further detail on what the A-133 auditors were in fact told about I-9 records and how such information, if truthfully presented, would have affected the outcome of the Audit or the Government's payment decisions. *See Universal Health*, 136 S. Ct. at 2003–04 ("proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims . . . based on noncompliance with the particular . . . requirement"); *Triple Canopy*, 857 F.3d at 178–79; *U.S. ex rel. Wilson v. Kellogg*

*Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008); ECF No. 22 at 7–12. When accepting all facts as true and in the light most favorable to Potter, the Amended Complaint establishes CASA's noncompliance with I-9 requirements, but allows for no inference that CASA was required to disclose I-9 noncompliance and yet failed to do so. Nor did Potter add any facts to show that, even if such information were required and withheld, the information was material to the Government's funding determinations. *See Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 173 (4th Cir. 2016). Because Potter has failed to cure these deficiencies after ample guidance from the Court, the FCA claim (Count I) and FCA conspiracy claim (Count II), which is predicated on the viability of the substantive FCA claim, are dismissed with prejudice. *See U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 413 (4th Cir. 2010); *Allison Engine Co., Inc. v. U.S. ex rel Sanders*, 553 U.S. 662, 672–73 (2008).

### B. FCA Retaliation (Count III)

As discussed in the Court's prior Memorandum Opinion, Potter's FCA retaliation claim rests largely on the theory that she was terminated because of her efforts to fix CASA's I-9 employee certification problem, and thus prevent an FCA violation.[2] An employee's efforts to stop a substantive FCA violation may constitute protected conduct if the employee is "motivated by an *objectively* reasonable belief that the . . . employer is violating, or soon will violate, the FCA." *Carlson*, 657 F. App'x at 172 (emphasis added); *see also Nifong v. SOC, LLC*, 234 F. Supp. 3d 739, 752–53 (E.D. Va. 2017). The plaintiff also must plausibly aver that the employer was on notice of the employee's concern about a potential FCA violation. *See Layman v. MET Labs., Inc.*, No. RDB-11-03139, 2012 WL 4018033, at *6 (D. Md. Sept. 12, 2012) (quoting *U.S.*

---

[2] In its initial Memorandum Opinion, the Court also identified a potential retaliation claim premised on Potter's post-termination disclosure to the Department of Justice, but noted that Potter had not pleaded facts sufficient to infer that her disclosure involved FCA-related activity, or that Defendants knew of Potter's disclosure. ECF No. 22 at 15–16. Potter has added no new facts about this disclosure, and so the Court will not revisit this theory of liability.

*ex rel. Ackley v. Int'l Bus. Machs. Corp.*, 110 F. Supp. 2d 395, 401 (D. Md. 2000)); *U.S. ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 388 (4th Cir. 2012); *Irving v. PAE Gov't Servs., Inc.*, No. 1:16CV1617, 2017 WL 4999563, at *4 (E.D. Va. Nov. 1, 2017). A plaintiff's statements "clearly couched in terms of concerns and suggestions" to her employer, as opposed to "threats or warnings of FCA litigation," are insufficient to constitute notice. *Parks*, 493 F. App'x at 389–90; *see Irving*, 2017 WL 4999563, at *7.

Potter's Amended Complaint remains deficient because Potter fails to plausibly aver how her concerns regarding CASA's I-9 procedures support an objectively reasonable belief that CASA was about to violate the FCA by failing to disclose the I-9 deficiencies to the Government. To be sure, the Amended Complaint adds further detail about how Potter engaged in due diligence, conducted research to ascertain the proper way to fix CASA's I-9 problem, and communicated her findings to CASA supervisors. *See* ECF No. 25 ¶¶ 66–69, 71, 73, 74, 76–78. However, CASA's rejection of Potter's recommendations does not support the conclusion that CASA made any "fraudulent representation to the government in an attempt to protect CASA's grant funding, which is the type of false claim prohibited by the FCA." ECF No. 25 ¶ 66. Nor does Potter offer facts in support of her assertion that CASA's proposed way to fix the I-9 problem amounted to "criminal fraud, for which she could be held personally liable." ECF No. 25 ¶ 70.

Accordingly, even with the additional facts taken as true and most favorably to Potter, the Court cannot infer that incomplete I-9s and CASA's proposed methods for addressing those deficiencies would amount to an FCA violation. Although Potter may be able to show that the I-9s were deficient and that Defendants' proposed methods to fix them were less than ideal, this is a different matter than whether any of CASA's three representations to the Government at issue

(the A-133 Audit, the PPAs and the FSPs) at all related to CASA's I-9s. Without this critical connection, the Court cannot conclude that Potter's views regarding an imminent FCA violation related to the I-9s were objectively reasonable. *See Nifong*, 234 F. Supp. 3d at 753–54 (employee could not have reasonably believed that an FCA violation was imminent when claim had not yet been submitted and efforts were being made to correct errors); *Carlson*, 657 F. App'x at 173 (belief in FCA violation not reasonable when plaintiff failed to articulate a "mechanism by which" the alleged inaccuracies "could later result in the government being fraudulently over billed"). This missing link alone is sufficient for dismissal of Potter's retaliation claim.

Additionally, the Amended Complaint does not allow for an inference that CASA was on notice that Potter was concerned about a potential false or fraudulent claim. Although Potter informed CASA generally that "the I-9 deficiencies, if not properly cured, could jeopardize CASA's government funding and could even result in debarment from future funding when the auditors discovered the issue," ECF No. 25 ¶ 78, Potter adds no facts to show how her statements should have alerted CASA to any concerns Potter had regarding a false or fraudulent claim, as opposed to Potter's belief that the Government may choose not to award CASA future grants if CASA's I-9 problems were not adequately addressed. *Cf. Universal Health*, 136 S. Ct. at 2004 (government's right not to provide funds is not equivalent to a claim being false or fraudulent under the FCA). Because Potter has failed to cure the FCA retaliation claim, it likewise is dismissed with prejudice.

### III. Motion to Alter or Amend

Potter asks the Court to reconsider its dismissal with prejudice of her state-law wrongful termination claim. Potter styles her motion as one for reconsideration, but does not specify the

provision under which she moves. The Court treats the motion as brought pursuant to Federal Rule of Civil Procedure 59(e). The Court denies Potter's requested relief.

A motion under Federal Rule of Civil Procedure 59(e) may be granted on three limited grounds: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not previously available; or (3) to correct a clear error of law or prevent manifest injustice. *See United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)), *cert. denied*, 538 U.S. 1012 (2003). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright *et al.*, Federal Practice and Procedure § 2810.1, at 127–28 (2d ed. 1995)). "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Id.* (quoting Wright *et al.*, *supra*, § 2810.1, at 124).

As explained in the Court's prior Memorandum Opinion, to state a claim for wrongful discharge, a plaintiff must allege plausibly (1) that she was discharged; (2) that the basis for the discharge violated some clear mandate of Maryland public policy; and (3) that a nexus exists between the plaintiff's allegedly protected conduct and the decision to discharge her. *See Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 451 (Md. Ct. App. 2017) (internal marks and citation omitted). The purpose of the tort is "to provide a remedy for otherwise unremedied violations of public policy." *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 423 (Md. Ct. App. 2003). As to wrongful termination claims, courts must "limit[ ] judicial forays into the wilderness of discerning public policy without clear direction from a legislature or regulatory source." *Szaller v. Am. Nat. Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002) (quoting *Milton v. IIT Research Inst.*,

138 F.3d 519, 523 (4th Cir. 1998)). Accordingly, such claims are allowed sparingly, and must be narrowly circumscribed. *See Porterfield*, 374 Md. at 423.

Potter argues that reconsideration is warranted because, contrary to the Court's opinion, Potter was terminated for refusing to violate the law, as she would be forced to do if she participated in CASA's proposed I-9 recertification plan. *See* ECF No. 24-1 at 2–3. Potter now argues that CASA's plan to have HR assistant Rocio Llera handle the I-9 re-certifications would effectively amount to a criminal violation of 8 U.S.C. § 1324c, and Potter, through her role as Llera's supervisor, would have been implicated in this criminal offense. *See* ECF No. 24-1 at 3. Accordingly, Potter now maintains that her refusal to go along with CASA's plan, and thus assist in a § 1324c violation, is what led to her termination, and forms the basis of a wrongful discharge claim. The Court disagrees.

8 U.S.C. § 1324c, entitled "Penalties for Document Fraud," in part prohibits an individual "knowingly and willfully fail[ing] to disclose, conceal[ing], or cover[ing] up the fact that they have, on behalf of any person, and for a fee or other remuneration, prepared or assisted in preparing an application which was falsely made . . . for immigration benefits." 8 U.S.C. § 1324c(e)(1). Potter appears to assert that she would have had a statutory duty to disclose CASA's I-9 issue, or else to violate this provision, if she allowed Llera to perform employee I-9 re-certifications, which Potter believed to be too complicated for Llera to handle. *See* ECF No. 24-1 at 3; ECF No. 25 ¶ 85. Potter's claim is untenable.

First, Potter has pleaded no facts to support that either she or Llera were in jeopardy of violating § 1324c(e)(1). No facts, for example, demonstrate that Potter or Llera were going to assist in "preparing an application *falsely made.*" 8 U.S.C. § 1324c(e)(1) (emphasis added). The Amended Complaint instead simply avers that Llera would be part of CASA's recertification

11

process in a manner with which Potter disagreed. Nor does Potter allege any facts that demonstrate she or Llera would fill out applications for immigration benefits in exchange for a fee or other remuneration, requisite elements according to the plain language of § 1324c(e)(1). *Cf. Perez v. United States*, No. 09-CR-1153 (MEA), 2017 WL 1628902, at *1 (S.D.N.Y. May 1, 2017) (discussing criminal charge under § 1324c(e)(1) for defendant "failing to disclose her role in preparing baseless applications [for a fee] for lawful United States resident status, in violation of Title 8, United States Code, Section 1324c(e)(1)."). Potter's "concern" about Llera's ability to handle employee I-9 re-certifications is a far cry from averring facts sufficient to support a theory that she was terminated for refusing to violate §§ 1324c or 1324c(e)(1). Accordingly, Potter has not plausibly alleged that she was fired for refusing to violate § 1324c, or because she would have a statutory duty to disclose any wrongful conduct under § 1324c(e)(1). Potter's motion for reconsideration is DENIED.

### III. Conclusion and Order

For the reasons above, and for the reasons expressed in the Court's prior Memorandum Opinion and Order in this case, it is this 1st day of October, 2018, by the United States District Court for the District of Maryland, ORDERED that:

1. The Motion for Reconsideration filed by Plaintiff AMALIA POTTER (ECF No. 24) BE, and the same hereby IS, DENIED;

2. The Motion to Dismiss filed by Defendants CASA DE MARYLAND, INC., CASA IN ACTION, INC., VIRGINIA KASE, and GUSTAVO TORRES (ECF No. 27) BE, and the same hereby IS, GRANTED;

3. The Amended Complaint filed by Plaintiff AMALIA POTTER (ECF No. 25) BE, and the same hereby IS, DISMISSED WITH PREJUDICE;

4. The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel for the parties; and

5. The Clerk is directed to CLOSE this case.

10/2/2018 /S/
Date Paula Xinis
United States District Judge